Barney, J.,
delivered the opinion of the court:
This suit arises out of contracts for the construction of locks in the Ohio River, between Pittsburg and Rochester, in the State of Pennsylvania, entered into between the defendants and parties who afterwards assigned the same to the Evansville Contract Company, which is now in bankruptcy, and of which the claimants are trustees.
The aggregate amount claimed is $4,581.23, and is made up of the following items, viz: $2,095.50 for 209.55 cubic yards of “ special ” stone alleged to have been used in the construction of said locks, $1,980 for 198 cubic yards of “ashlar” stone used for that purpose, and $505.73 which was paid by the contractors under protest to a party employed by the defendants to make certain tests of the quality of the materials entering into the construction of the locks.
The original contract provided for the payment of $10 per cubic yard for ashlar stone used in the construction of the locks, and a supplemental contract entered into between the parties provided for the payment of $10 per cubic yard in addition to this sum for such “special” stone so used; and the first item of the claim is based upon this supplemental *319 contract. The second item is for 198 cubic yards of ashlar furnished under the original contract, and for which it is claimed no payment has ever been made. As to these items it is sufficient to say that the uncontradicted evidence shows that the contractors never were paid this additional sum for 157.55 cubic yards of special stone furnished by them, and never received any payment whatever for 198 cubic yards of ashlar stone which was used in this work.
It appears that payment for a large part of the special stone above mentioned was refused for the following reason: The supplemental contract provided for the furnishing of 480 cubic yards “ more or less ” for each of the locks, and was executed December 7,1897. Instructions were issued by the Engineering Department under date of September 24, 1898, requiring supplemental contracts in all cases where the increase or decrease of materials furnished should exceed 10 per cent of the amount provided for in the original contract. Notwithstanding the fact that the Comptroller of the Treasury had decided that these instructions were not applicable to the contract in question, for the reason that the contractual rights of the parties were fixed by the contract before these instructions were effective (7 Comp. Dec., 350, 355), payment appears to have been refused for more than 10 per cent in excess of the 480 cubic yards “ more or less ” of special stone provided for in the supplemental contract for each one of the locks mentioned. We think the ruling of the Comptroller of the Treasury was right and that the contractors were entitled to receive payment for all of the special stone which they were required to use in the construction of the locks.
The contracts in question contained the usual provision that “the decision of the United States engineer officer in charge of the work shall be final and conclusive upon all matters relating to the work, and upon all questions arising out of these specifications, and from his decision there shall be no appeal.” Upon this subject it is sufficient to say that we have searched in vain to find in the record any finding or decision of the engineer officer in charge which can be said to contradict the evidence, both direct and circumstan *320 tial, of the contractors that the stone, for which no payment has been made, as stated, was furnished.
It is the contention of the claimants that they should recover the sum of $505.73 paid under protest by the contractors for inspection of materials furnished. This question involves a construction of that part of the contract relating to the subject of inspection of materials which is quoted in full in the findings, as well as the provision therein contained as to the decision of the engineer in charge and its finality, which has already been quoted in this opinion.
The contract provided that “ Sufficient tests [of materials] will be made at the expense of the contractor to satisfy the engineer that all material is up to the requirements.” This provision fairly implies that some expense may be incurred in making these tests, and, taken in connection with the other provisions mentioned, that the engineer in charge of the work is to decide as to the kind of tests to be made and the manner of making them. It is unnecessary to cite authorities to the point that, when properly exercised, such decision is final. We agree with the Comptroller that this cost of inspection was properly chargeable to the contractors.
Judgment will be entered for the claimants in the sum of $3,555.50.